UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:06-CR-149 |
| | ) | (PHILLIPS/SHIRLEY) |
| BRIAN KEITH JONES, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and by the Order [Doc. 19] of the Honorable Thomas W. Phillips, United States District Judge, for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. Defendant Brian Keith Jones's Motion to Suppress Evidence [Doc. 18] is presently pending before this Court. This matter came before the Court for a hearing on May 15, 2007. Assistant United States Attorney Tracy Stone ("AUSA Stone") was present for the government. Federal Defender Paul Voss ("Federal Defender Voss") and CJA Attorney Paul Hensley were present representing Defendant Brian Keith Jones ("Defendant"), who was also present.

Defendant has been indicted [Doc. 1] on one count of previously being convicted in courts of crimes punishable by terms of imprisonment exceeding one year and knowingly possessing a firearm, specifically, a Smith and Wesson 9mm semi-automatic pistol, and ammunition, in violation of 18 United States Code Section 922(g)(1), and one count of previously being convicted

1

in courts of crimes punishable by terms of imprisonment exceeding one year and knowingly possessing ammunition, specifically, one round of CCI 9mm ammunition and four rounds of Winchester 9mm ammunition, in violation of 18 United States Code Section 922(g)(1). These charges arise out of the search of a Super 8 motel room and Defendant's pants' pockets on May 17, 2005.

## I. BACKGROUND

Defendant has moved to suppress any and all evidence seized from Defendant at the time of his arrest[1] on May 17, 2005. [Doc. 18]. In support thereof, Defendant argues that he was illegally detained, frisked, and searched. Specifically, Defendant argues that reasonable suspicion to search Defendant did not exist at the time of his detention, frisk, or search. Additionally, he argues that the officer's removal of ammunition from his pants pocket was improper because the incriminating nature of the item was not immediately apparent.

In response, the government argues that the evidence was lawfully obtained pursuant to consent and that Defendant was never unlawfully detained. Additionally, the government asserts that Defendant lacks standing to challenge what was found in his pocket because Defendant disclaimed knowledge of his pockets' contents.

At the hearing, both parties' arguments were generally consistent with their briefs. Federal Defender Voss argued that <u>Terry</u> standards were not met. AUSA Stone argued that <u>Terry</u> requires a totality of the circumstances test, which was met in this instance. AUSA Stone conceded that whether the officer rightfully placed his hands in Defendant's pockets to obtain the

---

[1]Though Defendant's motion states that the evidence was seized at the time of his arrest, he was not actually arrested until May 20, 2005. On May 17, 2005, Defendant was searched and items were seized, but Defendant was ultimately released.

ammunition is a matter of consent, assuming the officer had the right to perform a pat down. Federal Defender Voss argued, in response, that the articulable suspicion standard was not met, and that three actions – detention, pat down, and reaching into the pockets – are at issue. She also stated that, during the course of the pat down, Defendant was asked what was in his pants' pockets, but no <u>Miranda</u> warning was ever given. In response to Defendant's <u>Miranda</u> arguments, AUSA Stone stated that <u>Miranda</u> is for custodial issues, and Defendant was not in custody; therefore, no <u>Miranda</u> issue exists. Additionally, he noted that Defendant consented to the search according to Officer Henry's testimony, and Officer Henry's credibility was never impeached.

## II. FACTS

At the evidentiary hearing on these motions, the government called Detective Sargent Pat Henry. Defendant took the stand on his own behalf.

**A.     Detective Sargent Pat Henry**

Detective Sargent Pat Henry ("Officer Henry"), an officer with the Sweetwater Police Department at the time of the incident, testified that on May 16, 2005, he received an anonymous tip regarding the possible sale of narcotics at the local Super 8 Motel ("Super 8"). The tip was specific to Room 219 at the Super 8, and stated that the tipster had observed drug dealing outside of the room. The tip do not describe the individuals involved or state their names. Officer Henry was not sure what time the call came in, but stated that he received it after coming on duty at 6:30 p.m.

After receiving this tip, Officer Henry drove to the Super 8 and checked the area periodically. He neither went up to Room 219, nor attempted to ascertain who had rented the room. He did not see individuals pulling into the parking lot, going to Room 219, or leaving a short time

3

later. Because only two officers were on duty that night, Officer Henry was unable to maintain constant surveillance.

At some point that evening, Officer Henry received a phone call from Lisa Latham ("Mrs. Latham"), who reported than an unauthorized individual was driving her car. She reported that her husband was supposed to be driving the car, but that he had, apparently, loaned it to someone. Mrs. Latham also reported that she thought her husband was smoking crack cocaine again. She requested that her vehicle be returned.

While out on patrol, Officer Henry testified that he saw Mrs. Latham's car at the Golden Gallon, a local gas station. He approached the car. Though the car was empty on arrival, Officer Henry later determined that the vehicle's occupants were Defendant and Allison Floyd ("Floyd"). They informed the officer that "Jamie"[2] had lent them the car. Officer Henry called Mrs. Latham, informed her of the car's location, and she came and drove it away. Officer Henry testified that Defendant and Floyd turned the car over without any unpleasantries, and there was never a suspicion that perhaps they had stolen the car.

Once Mrs. Latham drove her car away, Defendant and Floyd were left without any form of transportation. Officer Henry testified that he offered them a ride to wherever they were staying, which happened to be the Super 8. Defendant and Floyd accepted his offer of transportation. Officer Henry asked which room they were staying in, to which someone, or both, responded "Room 219." Apparently Defendant also stated, at some point, that he had been in Atlanta for part of the day.

---

[2]Neither party submitted evidence as to Jamie's identity. According to Federal Defender Voss, Jamie is a friend of Floyd's and is not Mrs. Latham's husband.

Upon arrival at the Super 8, Officer Henry testified that he told Floyd and Defendant about the anonymous tip he had received alleging that drugs were being sold from Room 219. Defendant stated that the tip was not true. Officer Henry testified that he then asked for consent to search and received it from Floyd and Defendant. Additionally, after the search, he got a written consent to search form, signed by Defendant. [See Exhibit 1 to the hearing]. Before the hotel room was searched, Officer King arrived to assist Officer Henry.

At approximately 3:30 a.m., Officers Henry and King entered the hotel room, gaining entry when either Floyd or Defendant opened the door with its key. Floyd and Defendant accompanied them into the room, but they were not handcuffed. Officer Henry testified that everybody was cordial, and the officers had assessed no threat level. In the room, the officers discovered scales, a razor blade, plastic baggies, and a Smith and Wesson pistol. No drugs were found in the room.

Upon discovery of the gun in a dresser drawer,[3] the officers secured Floyd and Defendant. Officer Henry testified that they were placed in handcuffs, and were patted down[4] out of concern for officer safety once the gun was found in a room containing drug paraphernalia. During the pat down of Defendant, Officer Henry stated that he felt a small, cylinder-shaped object. He testified that it did not feel like Chapstick or a key, he suspected that it was narcotics, but it did not feel like a weapon. He also testified that whenever he locates drug paraphernalia and a weapon,

---

[3]Officer Henry testified that he could not remember which officer had discovered the gun, so either Officer King or Officer Henry found it.

[4]Actually, Floyd was never patted down. Officer Henry testified that because no female officers were available to pat her down, the officers had Floyd turn her pockets inside out and reveal her waistband in lieu of a pat down. She was handcuffed.

5

he is concerned about the presence of another weapon because those involved in drug transactions often carry more than one weapon. He asked Defendant what was in his pants' pockets. Officer Henry testified that Defendant stated that he did not know what was in his pants' pockets. Officer Henry testified that he then asked Defendant for permission to remove the items from his pockets, and Defendant said something to the effect of "yes" or "sure." Officer Henry then removed the items, which were five rounds for a 9mm pistol.

Defendant and Floyd remained in handcuffs while a drug canine was called to conduct a search of the room. Officer Henry testified that he thinks Defendant and Floyd were handcuffed approximately forty to forty-five minutes, but he never testified that they asked to be let go.

Officer Henry testified that both Floyd and Defendant stated that they were staying in Room 219,[5] but that neither of them claimed ownership of the pistol found in Room 219.[6] After finding the ammunition on Defendant and the drug paraphernalia in the room, Officer Henry asked Defendant for identification. In response, Defendant provided a state-issued probation card. Officer Henry then performed a criminal history check, which revealed that Defendant had a robbery charge, but no disposition was noted. Because the officers could not confirm whether Defendant had a prior felony and no narcotics were found, they released Defendant that night. The investigation continued, and, a few days later, Defendant was arrested.

---

[5]The officers never checked the hotel registry to ascertain to whom the room had been rented.

[6]Defendant is not challenging the search of the hotel room, only the search of his person. [Doc. 18].

**B.      Brian Keith Jones**

Defendant took the stand on his own behalf. Upon questioning by Federal Defender Voss, Defendant testified that he did not give Officer Henry consent to reach into his pants pocket. No further direct or cross-examination was elicited which is relevant to the presently pending matter.

### III.  ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. Citizens also have the right to remain silent and the right to counsel under the Fifth and Sixth Amendments. Defendant contends that: (1) he was illegally detained; (2) an illegal frisk of his person occurred; (3) he has standing to challenge the search; and (4) he was illegally searched. The Court will address each of these issues in turn.

**A.      Illegal Detention and Frisk**

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. "However, a brief investigative stop, or Terry stop, by an officer who is able to point to 'specific and articulable facts' justifying his or her reasonable suspicion that the suspect has been or is about to be involved in criminal activity is not an unreasonable seizure." United States v. Martin, 289 F.3d 392, 396 (6th Cir. 2002) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)) (other citations omitted). Whether sufficient reasonable suspicion exists to permit an investigatory stop is evaluated under the totality of the circumstances. United States v. Arvizu, 534 U.S. 266, 273 (2002); Martin, 289 F.3d at 398.

Although an officer may not rely upon a mere hunch to support a Terry stop, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." Arvizu, 534 U.S. at 274.

7

Depending upon the circumstances giving rise to the investigative stop, the officer's reasonable suspicion permits the officer to detain the suspect while asking a moderate number of questions to identify the suspect and either confirm or dispel the officer's suspicions. Martin, 289 F.3d at 396. If the suspect's answers fail to supply the officer with probable cause to arrest the suspect, then the officer must release the suspect. Id. at 397.

In the present case, Defendant argues that reasonable suspicion did not exist for an investigatory stop. In conjunction with this argument, Defendant notes that when the purported "investigatory stop" began is also in question.

The Court finds, based on the uncontroverted testimony of Officer Henry, that the initial contact between Officer Henry and Defendant and Floyd was when Defendant and Floyd were approached about Mrs. Latham's car. Officer Henry testified that everybody was amicable and that no conflict arose. Defendant and Floyd willingly gave Mrs. Latham's car back to Mrs. Latham. Because they were now without transportation, Officer Henry offered to drive Defendant and Floyd to their destination. They accepted his offer. At the hotel, Officer Henry asked them which room was their's. Either Floyd or Defendant stated that it was Room 219. Officer Henry testified that his suspicions were aroused at that time, and he conveyed information to Floyd and Defendant about the anonymous tip he had received earlier. Officer Henry asked whether he could search the room, either or both of them consented, and no one objected. Either Floyd or Defendant produced a key which gave Officer Henry access to the room. During the search of the room, Officer Henry or his partner, Officer King, discovered a firearm. Up to this point in time, Officer Henry testified that neither Floyd nor Defendant were handcuffed, and they were certainly free to leave had they chosen to do so.

8

A police officer may approach and speak with an individual in a public place without interfering with the individual's Fourth Amendment rights so long as the individual feels he or she can freely leave. Florida v. Bostick, 501 U.S. 429, 434 (1991). The test for when the individual has been seized is whether a reasonable person in those circumstances would have felt he or she was not free to leave. Michigan v. Chesternut, 486 U.S. 567, 573 (1988); United States v. Cooke, 915 F.2d 250, 252 (6th Cir. 1990). The law is well-settled that merely approaching individuals in a public place and asking questions, if they are willing to listen, does not violate the Fourth Amendment's prohibition against unreasonable seizures. United States v. Drayton, 536 U.S. 194, 200 (2002) (citing Florida v. Royer, 460 U.S. 491, 497 (1983)). Reasonable suspicion is not required for a police-citizen encounter unless the encounter loses its consensual nature. United States v. Tillman, 963 F.2d 137, 142 (6th Cir. 1992).

This Court has no indication that the encounter between Defendant and the officers lost its consensual nature - at least not until the handcuffs were placed on Defendant. Officer Henry's testimony that both Floyd and Defendant were free to leave, not handcuffed, and not in custody has not been contradicted or impeached. Accordingly, this Court finds that, though they were without transportation, a reasonable person would have felt he or she was free to leave.[7] Accordingly, no investigatory stop or detention occurred up to this point.

---

[7]Defendant argues in his brief that he and Floyd were tired when they arrived at the hotel and without transportation; therefore they were not free to leave. This argument has little merit, and no evidence was presented at the hearing to substantiate this argument. If this Court adopted Defendant's argument, then any person who did not own a car, was tired, and was stopped by the police would have a legitimate argument that he or she was illegally detained. The law does not support this conclusion.

However, after finding the gun, the officers placed handcuffs on Floyd and Defendant for officer safety. At this point an investigatory stop or detention, in the form of a Terry stop, occurred. They proceeded to perform a pat-down of Defendant.

An officer may frisk a suspect for weapons to assure the officer's safety if a reasonable officer under those circumstances would be justified in believing his or her safety was at risk. Terry, 392 U.S. at 27; United States v. Strahan, 984 F.2d 155, 158 (6th Cir. 1993). "The focus of judicial inquiry is whether the officer reasonably perceived the subject of a frisk as potentially dangerous, not whether he 'had an indication' that the defendant was in fact armed." United States v. Bell, 762 F.2d 495, 500 n.7 (6th Cir. 1985); see also United States v. Thomas, No. 04-5872, 2005 WL 1869676, *2 (6th Cir. Aug. 3, 2005) . However,

> the Fourth Amendment does not tolerate, nor has the Supreme Court . . . ever condoned, pat-down searches without some specific and articulable facts to warrant a reasonable officer in the belief that the person detained was armed and dangerous. The Supreme Court has, in interpreting the Fourth Amendment, struck a balance between the justifiable concern for officer safety when confronting an individual and the substantial individual interest in being free from unreasonable intrusion.

Bennett v. City of Eastpointe, 410 F.3d 810, 841 (6th Cir. 2005).

Officer Henry testified that Defendant was free to leave before, during, and after the frisk, and that he had no reason to physically stop him if he chose to leave. The Court finds placing

Defendant in handcuffs belies the notion that he was free to leave. However, shortly thereafter, Officer Henry took the handcuffs off of Defendant, and Defendant was free to leave.[8] Furthermore, Defendant was not arrested until several days later, when his prior felony conviction had been confirmed.

Although the officers placed handcuffs on Defendant for a brief period of time and frisked him, this does not constitute an illegal search or seizure. See United States v. Atchley, 474 F.3d 840 (6th Cir. 2007) (holding that based on officer's experience and knowledge of people, and the present situation, an officer may be justified in handcuffing an individual as a safety precaution during a detention); see also Houston v. Clark County Sheriff Deputy John Does 1-5, 174 F.3d 809, 815 (6th Cir. 1999) (holding that the use of handcuffs doe not exceed the bounds of a Terry stop as long as the circumstances warrant that precaution).

Although the parties argue that the search of the motel room is not in issue, the Court finds that either Floyd or Defendant consented to the search of Room 219. During the search of the motel room, Officer Henry found a digital scale, plastic baggies, and a razor – items known by law enforcement to be part and parcel of illegal drug distribution. Either Officer Henry or Officer King found a loaded firearm in a dresser drawer. At this time, the Courts finds the following facts, known by Officer Henry, to be relevant to the totality of the circumstances:

> • Room 219 was linked to either Defendant or the person he was with, Floyd, as demonstrated by their giving consent to search the room and possessing a key to the room;

---

[8]No evidence was presented to inform the Court of whether Defendant left or stayed after the handcuffs were removed.

> •Defendant and Floyd initially were viewed in possession of a car, that was not their's, and was borrowed tangentially from a known drug user;
>
> • An anonymous tip stated that drug dealing was occurring that day from this very Room 219 at the Super 8;
>
> • The tip was corroborated when the officers discovered that Room 219 contained evidence of a drug operation, by virtue of the drug paraphernalia located therein; and
>
> • A loaded gun was found in the room.

Based on the totality of the circumstances, Officer Henry had at least reasonable suspicion to believe that criminal activity was afoot. As Officer Henry testified, he realized that the situation might be dangerous to the officers's safety, especially because those involved in drug operations often possess more than one weapon. Therefore, Floyd and Defendant were handcuffed, and Defendant was frisked.[9] This Court finds that the officers had particularized reasonable suspicion to believe that Defendant might be armed and dangerous based on the totality of the circumstances. Accordingly, neither the short detention, which began when Defendant was handcuffed, nor the frisk were unconstitutional.

As Defendant was never illegally detained or placed in custody, the Court also finds that Defendant's oral arguments pertaining to whether he should have been given Miranda warnings are without merit. Defendant was neither illegally detained nor in custody, therefore Miranda warnings, which are only required for custodial interrogations, were not necessary. United States v. Galloway, 316 F.3d 624, 628-29 (6th Cir. 2003) (citing Miranda v. Arizona, 384 U.S. 436, 477 (1966)).

---

[9]As noted above, Floyd was not frisked because of the lack of female officers to perform the frisk.

**B.	Standing**

The Fourth Amendment does not guarantee against all searches and seizures; it only guarantees against unreasonable searches and seizures. United States v. Sharp, 470 U.S. 675, 682 (1985). Additionally, Fourth Amendment rights are personal rights which cannot be vicariously asserted. Minnesota v. Carter, 525 U.S. 83, 88 (1998); United States v. Williams, 353 F.3d 497, 511 (6th Cir. 2003). Because the Fourth Amendment guarantees only against unreasonable searches and seizures and these rights are personal, the defendant bears the burden of proving that his own Fourth Amendment rights were violated, and that he has "standing," to assert a Fourth Amendment violation. United States v. Salvucci, 448 U.S. 83, 86 (1980); Rakas v. Illinois, 439 U.S. 128, 132 (1978).[10]

The government argues that Defendant does not have standing to contest the search of his pants' pockets because he professed no knowledge as to what was in his pants' pockets, therefore, purportedly disclaiming ownership in the items within his pants' pockets. Defendant asserts that he has standing to challenge the search of his pants' pockets. To reach the government's desired result, the Court would have to find that a defendant has no right to challenge the search of his person. However, case law dictates that, even when the defendant lacks standing to challenge the search of the general premises surrounding his person, he still has standing to contest the search of himself. United States v. McNeal, 735 F. Supp. 738, 742 n.7 (N.D. Ohio 1990) (citing Rakas v. Illinois, 439 U.S. 128, 164, n.11 (1978)). Moreover, in a factually similar case, the Sixth Circuit determined that where heroin was found on a defendant's person, "[h]e certainly has standing to

---

[10]Technically, the concept of having standing, based on the item seized, has been discarded. Salvucci, 448 U.S. at 88 n. 4. The current standard is simply "[w]hether the defendant's rights were violated by the allegedly illegal search or seizure." Id.

13

object to a search of his person even if he ultimately gives a 'how did that get there' reaction to what is found." United States v. Smith, 884 F.2d 581, 1989 WL 102321, at *3 (6th Cir. Sept. 7, 1989) (unpublished) (per curiam). Accordingly, this Court finds that Defendant has standing to contest the search, and will now proceed to weigh whether the search of Defendant's pants' pockets was constitutional.

**C.     The Issue of Consent to Search**

An individual's voluntary consent to a search is an exception to the warrant requirement of the Fourth Amendment. A valid search may be made without a warrant and without probable cause if the person voluntarily consents to the search. Schneckloth v. Bustamante, 412 U.S. 218, 219, 228-29 (1973). "It is well-established that a warrantless search by law enforcement officials will be upheld if a detainee has voluntarily consented to the search." United States v. Van Shutters, 163 F.3d 331, 335 (6th Cir. 1998) (citing Schneckloth, 412 U.S. at 219). The government bears the burden of proving that the consent was voluntary and not "the result of coercion, duress, or submission to a claim of authority" based upon the totality of the circumstances. Id. The government must make this showing through "clear and positive testimony" and to a preponderance of the evidence. United States v. Worley, 193 F.3d 380, 385 (6th Cir. 1999). In determining whether consent was voluntary, the Court should consider the defendant's age, intelligence, and education level; if the defendant understood he had the right to decline to consent; if the defendant appreciated his constitutional rights; the nature and duration of the detention; and whether the officers used punitive or coercive conduct. Id. at 386.

In the present case, AUSA Stone conceded that whether the officer rightfully placed his hands in Defendant's pockets to obtain the bullet is a matter of consent, assuming the officer had

14

the right to perform a pat down.[11]  As this Court has already determined that Officer Henry was constitutionally permitted to perform a frisk of Defendant, the pat down was proper.  Therefore, the sole issue is whether Defendant consented to the search.

Officer Henry testified that Defendant voluntarily consented to the search of his pants' pockets through stating something to the effect of "yes" or "sure" when Officer Henry asked whether he could reach into Defendant's pants' pockets.  Defendant testified that he did not consent to a search of his pants' pockets.  Thus, this Court must determine: (1) the witnesses's credibility and (2) whether the government has satisfied its burden of proving that the consent was voluntary.

    1.    <u>Credibility</u>

As noted by AUSA Stone, Officer Henry's testimony has not been shown to lack credibility.  In this instance, the Court must determine who is more credible: Officer Henry or Defendant.  Officer Henry subjected himself to rigorous direct examination and cross-examination.  He was neither patently impeached nor proven to be a biased witness.  Defendant, however, was subjected to very limited questioning.  In fact, the sole relevant question asked of Defendant was

---

[11] To the extent an argument was made that the officers had a right to search Defendants' pant's pockets under the "plain feel" doctrine, the Court notes that such an argument fails.  Under <u>Terry</u> and its progeny, a protective search is "'limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.'" <u>Minnesota v. Dickerson</u>, 508 U.S. 366, 378 (1993) (quoting <u>Terry</u>, 392 U.S. at 26).  However, if, during the protective search, an officer feels an object and the incriminating character of the object is "'immediately apparent,'" then the object may be removed.  <u>Id</u>., at 375 (citing <u>Horton v. California</u>, 496 U.S. 128, 136-37 (1990)).  Officer Henry said that the object felt like a small, cylindrical object, and he thought it was likely narcotics.  There is no indication that Officer Henry thought Defendant had a weapon in his pocket.  Additionally, he testified that he "thought" the item might be narcotics, which is not sufficient to satisfy the "immediately apparent as contraband" requirement of the "plain feel" doctrine.  Accordingly, but for Defendant's consent, the officers' search of Defendant's pant's pockets would have been unconstitutional, and the evidence seized (five 9mm rounds) would have been recommended to be suppressed.

15

whether he gave the officer consent to remove the items from his pants' pockets. Defendant testified that he did not give the officer consent, and direct examination concluded. On cross-examination, AUSA Stone elicited some other testimony that is not particularly relevant to this issue.

This Court is entitled to credit the testimony of one witness over another's. United States v. Simmons, 174 Fed. Appx. 913, 917, 2006 WL 891038, at *4 (6th Cir. Apr. 4, 2006) (unpublished); United States v. Fisher, 27 Fed. Appx. 558, 560, 2001 WL 1609935, at *2 (6th Cir. Dec. 13, 2001) (unpublished) (holding that where there are two permissible views of the testimony at issue, the court is entitled to choose between them, so long as the choice is not "clearly erroneous") (quoting to United States v. Ivy, 165 F.3d 391, 401-02 (6th Cir. 1998)). In this instance, the Court credits the testimony of Officer Henry because he is a member of law enforcement, has not been shown to be biased in any way, and has not been controverted on any other issue besides Defendant's testimony regarding consent. See, e.g., United States v. Walls, 116 Fed. Appx. 713, 716, 2004 WL 2725981, at *3 (6th Cir. Nov. 30, 2004) (unpublished) (holding that the district court properly made its factual determination that a police officer was more credible than the defendant where their testimony was directly opposite, and the determination was solely a matter of credibility). This Court finds Officer Henry to be a credible witness. The extremely limited testimony of Defendant, without further explanation simply denying that he gave consent, does not provide much testimony on which the Court can assess his credibility. However, Defendant's credibility is somewhat impeached by his prior felony conviction and obvious bias. Accordingly, based on the sum totality of the testimony, this Court finds as the more credible testimony to be Officer Henry's testimony, that Defendant consented to the search of his pants' pockets.

2. Burden of Proof

As noted above, the government bears the burden of proving that the consent was voluntary and not "the result of coercion, duress, or submission to a claim of authority" based upon the totality of the circumstances. Van Shutters, 163 F.3d at 335 (citing Schneckloth, 412 U.S. at 219). The government must make this showing through "clear and positive testimony" and to a preponderance of the evidence. Worley, 193 F.3d at 385. In determining whether consent was voluntary, the Court should consider the defendant's age, intelligence, and education level; if the defendant understood he had the right to decline to consent; if the defendant appreciated his constitutional rights; the nature and duration of the detention; and whether the officers used punitive or coercive conduct. Id. at 386.

No evidence was presented of Defendant's age, intelligence, or educational level, but Federal Defender Voss allowed Defendant to testify, which demonstrates that he is at least competent to testify. Additionally, if his age, intelligence, or educational level were in question, Federal Defender Voss could have elicited questions on those issues to Officer Henry. Therefore, this Court determines that Defendant's age, intelligence, and educational level are sufficient to understand the concept of consent.

No evidence was presented not any argument made that the officers used punitive or coercive conduct in obtaining consent from Defendant. "The absence of an overt act or threat of force, promises made to a defendant, or indications of more subtle forms of coercion that might flaw a defendant's judgment indicate that a defendant's consent was freely given." Morphis v. United States, 110 Fed. Appx. 527, 530, 2004 WL 2030043, at *2 (6th Cir. Aug. 31, 2004) (unpublished)

17

(citing United States v. Watson, 423 U.S. 411, 424 (1976)). Thus, this Court finds that the officers neither employed punitive nor coercive tactics in obtaining consent from Defendant.

No evidence was presented nor any argument made that Defendant did not understand that he had the right to decline to consent or appreciated his constitutional rights. In fact, Defendant's argument, that he did not consent, is contrary to such an argument. Furthermore, the Court notes that "a defendant's knowledge of the 'right to refuse consent is a factor, but the government need not prove that the defendant had such knowledge to establish that consent was voluntary.'" Morphis, 110 Fed. Appx. at 530, 2004 WL 2030043, at *3 (quoting United States v. Erwin, 155 F.3d 818, 823 (6th Cir. 1998)).

Another factor considered when evaluating whether consent is voluntary is the nature and length of detention. Worley, 193 F.3d at 386. No argument was advanced that the nature and length of detention affected any voluntariness. Furthermore, Officer Henry's testimony reveals Defendant's interactions with the officers were cooperative and amicable. It does not appear to this Court that the interactions were hostile, argumentative, or coerced. Accordingly, under a totality of the circumstances test, this Court does not find that the nature or length of Defendant's detention was unreasonable. United States v. Garmond, 116 F.3d 166, 171 (6th Cir. 1997).

At the hearing, some argument was presented that Defendant would not have voluntarily consented because such consent was not in his best interest. However, defendants often consent even when such consent is not in their best interest; in any event, the question is not whether consent was in the defendant's best interest, but rather, whether consent was voluntary. See Evans, 225 F.3d 660, 2000 WL 799364, at *4 (holding that consent was voluntary where Defendant was

taken to the precinct and subjected to a cavity search even though the defendant asserted such consent was not given as it would be nonsensical).

In the absence of duress, coercion, or a lengthy non-consensual detention this Court finds that it is unlikely Defendant's consent was involuntary. The facts coupled with no indication of Defendant's inability to comprehend consent and understand whether to do so, leads this Court to the conclusion that Defendant's consent was voluntary, and that the government has carried its burden to the preponderance of the evidence in proving that said consent was voluntary. See Morphis, 110 Fed. Appx. at 531, 2004 WL 2030043, at *3 (finding consent was valid where: defendant had previously been arrested and was familiar with law enforcement procedure; no evidence was presented which showed that the defendant was uneducated or had limited intelligence; and no evidence was presented of threats of physical violence, coercion, or duress).

Additionally, the Court notes that no evidence was presented to indicate that Defendant protested the search of his pants' pockets once the search began. Though not dispositive, such a lack of evidence reinforces this Court's position that Defendant voluntarily consented to the search of his pants' pockets. Faulkner, 133 Fed. Appx. at 303, 2005 WL 1312858, at *4 (holding that a magistrate judge's determination that consent was voluntarily given, based in part on the fact that the defendant did not protest the search once it began, was proper).

In sum, this Court finds that Defendant voluntarily consented to the search of his pants' pockets, and Defendant was not unconstitutionally detained or frisked.

## IV. CONCLUSION

After carefully considering the evidence introduced during the course of the evidentiary hearing and the relevant legal authorities, there is no basis to suppress the ammunition recovered from Defendant's pants' pocket. For the reasons set forth herein, it is **RECOMMENDED** that Defendant Brian Keith Jones's Motion to Suppress **[Doc. 18]** be **DENIED.**[12]

Respectfully submitted,

_____
C. Clifford Shirley
United States Magistrate Judge

---

[12] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see also Thomas v. Arn, 474 U.S. 140 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).