UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:06-CR-149 |
| | ) | (PHILLIPS/SHIRLEY) |
| BRIAN KEITH JONES, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and by the Order [Doc. 46] of the Honorable Thomas W. Phillips, United States District Judge, for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. Defendant Brian Keith Jones's Motion to Exclude Evidence or Testimony Related to the Ammunition Allegedly Seized from Mr. Jones [Doc. 44] is currently before the Court. The government filed a response [Doc. 49], on October 27, 2007. The parties appeared before the Court on November 7, 2007 for an evidentiary hearing. Assistant United States Attorney Tracy Stone ("AUSA Stone") was present for the government. Attorney Wade Davies ("Attorney Davies") was present representing Defendant Brian Keith Jones, who was also present. At the November 7, evidentiary hearing, AUSA Stone requested a continuance of the hearing in order to provide defense counsel with recently obtained *Giglio* materials, which pertained to Defendant's motion. The parties reconvened before the Court on November 13, 2007 and November 15, 2007. At the conclusion of the hearing on November 15, the Court took the motion and related filings under advisement on November 16, 2007.

1

## I. POSITION OF THE PARTIES

Defendant Brian Keith Jones moves the Court to exclude any testimony or evidence offered by the government regarding ammunition allegedly seized as a result of a search of his pants pocket on May 17, 2005. Pursuant to Fed. R.Crim.P. 16(a)(1)(E), Defendant contends he is entitled to inspect any tangible objects within the government's possession, custody, or control when (i) those items are material to preparing the defense; (ii) the government intends to use the items in its case-in-chief at trial, or (iii) the item was obtained from or belongs to the defendant. Defendant argues his attorney made a timely request that the government produce the bullets that were allegedly seized, but that the government advised his attorney that the bullets cannot be produced because they were mixed by the law enforcement agency with other bullets not in evidence in this case, and cannot be identified. Defendant contends he is significantly prejudiced by the government's inability to produce the evidence since he is now unable to independently examine the bullets as well as cannot effectively challenge conclusions reached by an expert that may testify about the bullets. Defendant further contends that the denial of the opportunity to challenge the government's proof violates his right to Due Process and his right to present a defense. Thus, Defendant argues the evidence and any proffered testimony regarding the bullets should be excluded.

The government, in response, argues Defendant's motion should be denied because even though the bullets recovered from the Defendant in this case were destroyed, Defendant has failed to show bad faith on the part of the Sweetwater Police Department in the destruction of the evidence. Further, the government contends the party truly prejudiced by the missing ammunition is the government, not the Defendant. The government argues the Defendant is not prejudiced because

there is no potential exculpatory value to Defendant, whereas the government must now prove the interstate nexus element without being able to show the ammunition at issue to the jury.

## II. SUPPRESSION HEARING TESTIMONY

At the suppression hearing, the government called three witnesses: Officer Pat Henry, formerly of the Sweetwater Police Department; Assistant Chief James Michael Jenkins, of the Sweetwater Police Department; and Special Agent Steven Parris, of the Bureau of Alcohol, Tobacco, Firearms and Explosives.

### A. Officer Pat Henry

Officer Pat Henry ("Officer Henry") testified that on May 17, 2005, the night in question, he recovered a loaded Smith and Wesson pistol (with one round of ammunition in the chamber) from a Super 8 motel room in which Defendant was staying. Officer Henry further testified he conducted a search of Defendant Jones and seized a 9 mm pistol and five rounds of ammunition.[1] He then testified upon leaving the Super 8 motel room, he returned to the Sweetwater Police Department ("SPD") where he logged and stored the bullets and the pistol. He testified as to Ex. 1, the property receipt for the pistol and the bullets. He noted that the property receipt indicated a loaded magazine. He testified he placed the evidence in Locker #8 at the patrol station. Officer Henry explained to the Court that if the evidence locker at the station is available for storage, it is left open. Officer Henry then stated he placed the evidence at issue in this case in Locker #8 and locked it with the attached pad lock. Officer Henry then testified that the pad lock is one in which can only be

---

[1]This Court, in a previous Report and Recommendation, found Defendant Jones consented to a search of his person, which resulted in Officer Henry finding the five rounds of ammunition [Doc. 24]. At the hearing, Officer Henry also said the pistol had one bullet in the chamber, but he could no longer remember if the magazine was loaded or contained bullets.

unlocked with a key. He testified that his offense report (Ex. 2) documented recovery of the pistol only and that the arrest warrant (Ex. 3) only mentioned possession of a weapon. Officer Henry further testified that he charged Defendant with violation of Tennessee state law relative to possession of the pistol only, because possession of bullets/ammunition by a convicted felon is not a Tennessee state law violation, thus the charge only incorporated the pistol. Officer Henry also testified he recovered a razor blade, digital scales, and plastic bags. He stated he put the bullets and the pistol in one bag and the rest of the items in a second bag and both bags were placed in Locker #8. to which he did not have a key.

Officer Henry testified that he left the SPD in September 2006 and accepted employment with the Monroe County Sheriff's Office. Officer Henry testified that he heard the state charges against Defendant were dismissed, but was not told the evidence was to be disposed of. He first became aware that evidence was missing a month ago. At the hearing, Officer Henry testified that based on his memory, the bullets matched the gun found, but he could not recall the brand of bullets and did not document that information.

On cross-examination, Officer Henry testified the property receipt (Ex. 1) was filled out at the Super 8 motel, noted one "loaded magazine", seized from Room 608, and was signed by Defendant Jones. He confirmed the pistol and the bullets seized went into one evidence bag. Officer Henry stated that normal routine practice was followed, which means the evidence bags were sealed and he wrote on each bag what was inside. When asked about the keys to the evidence lockers, Officer Henry testified that he did not have a key, but that the evidence custodian maintains control of the key. He testified he never saw the gun or the bullets again after he put them in the locker. He also testified the evidence log was not in his writing and would have been created by the

4

evidence custodian (Ex. 6). He also stated that the current evidence custodian is the same individual as was in 2005.

He then testified that he contacted Special Agent Steven Parris ("SA Parris") with ATF regarding this case. He stated he called SA Parris a few weeks after Defendant's arrest on state charges, but did not keep a record of the phone call. He stated the SPD is not a large police department and that members of the department discuss arrests with each other all the time. He further testified that after he contacted SA Parris, he sent SA Parris Defendant's file and met with SA Parris in person. He then testified that he followed up with SA Parris regarding the intent of the federal government in this case. He was then asked about video cameras in the police cruiser, to which he responded that the seizure occurred in May 2005 and at that time, there were not video cameras in the SPD cruisers. Finally, he testified he'd never seen the metal box with random bullets in it.

On re-direct, Officer Henry testified in response to the Exhibits not mentioning the bullets recovered, that this was because it is not illegal under Tennessee law for a convicted felon to be in possession of bullets, so the bullets were not listed. He also explained that his various references to the bullets being seized from the Super 8 motel room and from Defendant's pockets meant they were seized from Defendant's pockets in the room.

### B. Assistant Chief James Michael Jenkins

Assistant Chief James Michael Jenkins ("Assistant Chief Jenkins") started his career in law enforcement with the SPD. He has worked for the SPD for twenty-eight years and for the last five years has been an Assistant Chief. Assistant Chief Jenkins testified that he is responsible for

maintaining the evidence at the department. He testified pursuant to SPD internal procedures, evidence and property recovered from arrested individuals are destroyed or purged once it is determined the evidence or property is no longer needed. He identified Ex. 6 as the evidence log that he filled out. He acknowledged it only included: (1) 9 mm Smith and Wesson handgun and (2) box of baggies with digital scale. Assistant Chief Jenkins then testified, in this case, he received a court order and mistakenly thought the case was dismissed (nolled) so the SPD petitioned the Criminal Court in Monroe County on January 17, 2007 to destroy the pistol in this case.[2] He further testified the pistol recovered from the Defendant was not destroyed, but was auctioned off and bought by a gun store, Tom's Bookstore, a licensed firearms dealer. He stated the auction was on May 21, 2007. Assistant Chief Jenkins then testified that he is unsure what happened to the bullets recovered from the Defendant on May 17, 2005. He surmised they might have been put in a small metal container which he keeps in his office, in which he keeps loose bullets. He testified this is a normal routine with live ammunition.

Assistant Chief Jenkins further testified regarding the routine practice at the SPD in preserving evidence collected. He testified that there are a set of lockers used to store the evidence, which he has the only set of keys for. He further testified that if the evidence tape is sealed on the evidence bag, the officers rely on the property receipt or might rely on the listing on the envelope to determine the contents of the bag.

Assistant Chief Jenkins was then asked by the government about his interaction with SA

---

[2]The petition submitted to the Monroe County Criminal Court requested the court to declare 51 weapons, listed in an attached memorandum, contraband and "order that the weapons be traded for law enforcement equipment or destroyed by melting, cutting, or crushing as provided in TCA 39-17-1301 et. seq." (Ex. 4).

Parris. Assistant Chief Jenkins testified that SA Parris came to the SPD on frequent occasions, spoke with the SPD officers regarding pending cases. He then stated SA Parris took notes and wrote things down concerning the cases, but cannot testify that SA Parris looked at the particular evidence at issue.

Assistant Chief Jenkins further testified that he never intended to destroy the evidence and that he made a mistake by having the pistol auctioned and the ammunition misplaced. He stated that in hindsight, he would have checked further into the case to determine the status, but that he did not know anything about the potential federal case or investigation. He further testified that in addition to this case, he remembers two others which started as a state arrest and then became the subject of a federal investigation.

The government then asked Assistant Chief Jenkins about other instances at the SPD where evidence was destroyed. Assistant Chief Jenkins testified the first incident occurred on January 18, 2007 where five weapons went missing. He stated these weapons were taken from his office. He stated he was away from his office when they went missing. He further testified that there is an on-going investigation and the SPD has a suspect in mind. The second incident Assistant Chief Jenkins testified to was in August, 2007. He testified that a significant sum of money, around $25,000, was stolen from the detective's evidence room. Assistant Chief Jenkins testified he does not know many of the details of this theft as the room in not in his control. He further stated that the matter has been referred to the TBI and they have a suspect.

On cross-examination, Assistant Chief Jenkins was asked about the small metal box of

7

ammunition referenced in his direct testimony.[3] Assistant Chief Jenkins testified that it is SPD practice to put ammunition no longer going to be used into this box for storage. He further stated that in the past two months, no ammunition has been removed from this box. The Court then asked Assistant Chief Jenkins how many bullets are currently in the box, and Assistant Chief Jenkins replied about 110. He further started that also in the box are envelopes with notations about what used to be in those envelopes. In reference to the box, Assistant Chief Jenkins further testified that the if ammunition or bullets are to be discarded, they are placed in the box. Discarded ammunition is never sold nor used for personal use.

Assistant Chief Jenkins then testified that the evidence log (Ex. 6) is not filled out by the arresting officer, but that he fills it out as the evidence custodian. He further testified that he makes the inventory from the locker the evidence is placed in. He stated if the envelope is sealed, he will not open it but instead rely on the officer's notations on the envelope as to its contents. He testified if the envelope is not sealed, he will look inside and make sure the evidence is secure. In this case, Assistant Chief Jenkins testifies he does not remember if the envelope was open or sealed. Assistant Chief Jenkins was then asked to read the evidence log and what is listed in relation to Defendant Jones. Assistant Chief Jenkins then read the description from the log into the record. He stated the description as 1 Smith and Wesson pistol, 1 box baggies, digital scales.

---

[3]Assistant Chief Jenkins was asked by defense counsel to bring the small metal box in which the SPD stores discarded ammunition. The Court notes its uneasiness with witnesses bringing live ammunition into the Courthouse. In the future, the Court requests notice when live ammunition is proposed to be brought into the Courthouse, and the Courtroom. In this case, the Court took the box of ammunition and put it in the Court's safe for security purposes. It was marked as Ex. 9 and was sealed and marked in front of the parties. It was later opened when the government and Defendant's counsel and investigator requested that it be opened, inventoried, and photographed. This was done in chambers.

Assistant Chief Jenkins was then asked about Ex. 4, the petition to destroy weapons, submitted to the Criminal Court for Monroe County, which he testified he prepared. Assistant Chief Jenkins testified Tennessee state law allows him to destroy or use surplus weapons. He also conceded the petition indicated these weapons, including the one in issue, were not needed for court, but also admitted the state court action was still pending as of January 17, 2007, the date of the petition. He also testified there was no ammunition on the list. He then testified there is no written criteria, advice, standards, or guidelines when deciding what evidence to dispose of, but that sometimes the decision is made by the age of the evidence. He stated that if something is two years old, he will take a look at it to see if it can be included in a petition for destruction. He further stated that he will sometimes check the disposition of the case with the clerk's office to inquire as to the status of the case or that he may call the court for an update into the disposition. He further stated he has filed this specific petition about four times in his career as evidence custodian and that the order received from the court granting the petition is signed by the Assistant District Attorney.

Assistant Chief Jenkins further testified that in this case, regarding this gun, he did not consult with Officer Henry nor check with NCIC before destroying the evidence, although he knew how to contact Officer Henry at his new department. Assistant Chief Jenkins further testified that the evidence lockers at the SPD are not locked if nothing is in them. He stated they are locked once an officer places recovered evidence in inside one of them. He also testified that he does not create a record of who comes to look at the evidence unless that person takes the evidence, thus if SA Parris looked at the evidence at issue in this case, no record would be made unless SA Parris removed it, then he would be required to sign a receipt. However, Assistant Chief Jenkins testified to the best of his recollection ATF never took any firearms from SPD for their investigations.

9

He concluded his cross-examination testimony by stating that if the bullets had been in the evidence envelope, he might have put them in the metal box or he might not. He became aware of their loss when SA Parris asked for them and then SA Parris took the box of bullets.

On re-direct, Assistant Chief Jenkins testified the metal box of bullets is kept in a closet in his office. He testified he did not <u>know</u> if he put these bullets in the metal box, but he <u>thinks</u> he did. The government asked Assistant Chief Jenkins whether he locks his office. Assistant Chief Jenkins testified that if he is out of his office for an extended period of time, he will lock his office, but if he is leaving his office to go to another area in the building, he will leave it open. He stated that at the time of the January 2007 incident when guns were stolen from his office, his office was unlocked. He testified that he was away from his office for a short period so he did not lock it. He further testified that when the office is unlocked, whoever comes by has access to it, but that the closet where he keeps the metal box with ammunition is always locked, so no one would be able to access it if he was not in his office. Assistant Chief Jenkins then testified that he has allowed SPD Firearm Instructors to have a few rounds of ammunition from the box, but did not think this had been done since January 2007. He also testified they carry .45 caliber firearms, not 9 mm. He also testified that the Citizens Police Academy have asked for ammunition in the past, but that the most recent time was two months ago and before that, it was about a year and a half to two years ago, which would have been before January 2007.

### C. Special Agent Steven Parris

When the evidentiary hearing reconvened on November 15, SA Parris, a special agent with ATF, was the only witness. SA Parris testified that he is a Special Agent with the ATF and he

10

investigates federal firearm violations, mainly felon in possession cases. He testified he works in the Knoxville office, which covers five counties, including Monroe County. SA Parris then explained to the Court via his testimony what an "adopted case" is. He testified that in an "adopted case", the federal authorities are notified by the local police regarding an arrest that may be suitable for federal prosecution. He testified in this matter, he was contacted by Officer Henry personally. He stated that he was standing outside the SPD when approached by Officer Henry regarding Defendant Jones. Officer Henry at first did not know, but later confirmed that Defendant was previously convicted of a felony. SA Parris said he confirmed it as well.

SA Parris further testified that Officer Henry brought him to Assistant Chief Jenkins's office to inspect the evidence and he looked at both the weapon and ammunition. He was shown an envelope with the Smith and Wesson and a smaller envelope with 5 rounds of ammunition, plus one round in the gun. He further testified that he opened the envelope with the pistol and conducted a "test fire" of the gun in Assistant Chief Jenkins's office. This was not done with live rounds. He stated he was not certain if there was any writing or documentation on the outside of the envelope, but that if there was, maybe the name of the Defendant and the date were listed.

SA Parris testified he followed the same procedures in this case as he has done previously and that he never took custody of the evidence, leaving it with the SPD. He testified all he did with the evidence was inspect the pistol and conduct a "test fire." He testified Ex. 11 was his notes regarding the inspection. These notes showed "1 round CCI 9 mm in magazine"; "1 round CCI 9 mm loose"; "4 rounds Winchester loose". His notes indicate the loose rounds, per Officer Henry, were found in Defendant Jones's pocket. He testified all rounds were 9 mm and that the magazine was not in the gun. He testified Ex. 13 was his "test fire" report done on April 18, 2006. He then

11

testified he was asked by defense counsel to arrange for an inspection of the evidence, at which time he discovered the pistol has been auctioned and that the ammunition had been commingled. SA Parris further testified that he brought the metal box from the SPD into the ATF office and Attorney Davies was invited there to inspect the ammunition inside the metal box.

SA Parris then testified that he tried to recover the pistol from Tom's Bookstore at the government's request. He further testified he was able to recover the gun and then took it into custody for this case. He stated the weapon is currently in the ATF vault. He testified there was no intent to destroy evidence and no one asked his permission to do so. He did not know if SPD was aware of the federal prosecution, though they did inquire often regarding status. He admitted this type of loss is very rare.

On cross examination, SA Parris was asked, in his opinion, what contributes to a police department losing evidence. SA Parris stated that he did not think losing evidence was a common occurrence, but that it is feasible and can happen. He further stated he did not think the size of the department matters in their ability to preserve evidence. He further testified that ATF's official policy regarding retention of evidence is to keep it in a secure location. He also testified that he could not recall an incident where he lost evidence. Further, he stated he is not trained in Tennessee law and is not sure what is required of local police departments regarding destroying firearms when prosecuting state cases since he is exclusively involved in federal prosecutions. He testified his practice is to leave property in the custody of the local police department, so they can eventually dispose of it.

SA Parris then testified that he was contacted by the SPD regarding the case against Defendant Jones. He stated it is not unusual for ATF to be contacted by a local department in order

to adopt the case. He testified most cases are adopted cases. In this case, he stated that this matter was originally referred by Officer Henry personally. Officer Henry left in the Fall of 2006. He discussed the case with Assistant District Attorney Thompson while Officer Henry was still with the SPD. He later talked with Wade Adcox, who encouraged him to look at this case. He has no notes of this conversation. He did receive Officer Henry's case file. He thinks he may have generally reminded the SPD to be sure they kept the evidence once this matter was indicted in Federal Court. He conceded he did not communicate this Court's Order on Scheduling and Discovery, which includes a requirement that the government produce tangible objects it intends to use in its case in chief. He did not take the gun to the Grand Jury.

On April 18, 2006 he had contact with Assistant Chief Jenkins in order to inspect the evidence. He testified there were two envelopes - a smaller one inside a bigger one. He could not recall if there was writing and no photos were made. He stated the larger envelope, which contained the pistol, may have had a plastic bag around it and perhaps there was some writing on the outside of the envelope, such as a generalized description of the pistol, *e.g.*, make, model, serial number, etc. He further testified that when he finished the examination, he told Assistant Chief Jenkins he was finished, thanked him, and left. He stated that the evidence was still in the office when he left.

SA Parris then testified he learned about the problems with producing the bullets from the SPD at the end of August or September. He was told the gun had been auctioned, but they might still have the ammunition. He went to the SPD the end of September. He testified that Assistant Chief Jenkins brought the metal box out and that he saw it was full of various rounds of ammunition. SA Parris then testified he took control of the metal box for one day for inspection with Defendant's attorney and returned the box the next day. He further testified that he examined the ammunition

13

in the metal box. He stated that during the inspection with Defendant's attorney the 9 mm bullets were segregated. He confirmed there were no CCI 9 mm bullets and 11 different Winchester 9 mm bullets.

SA Parris was then asked about certain allegations made by the Professional Review Board at the ATF regarding an accidental discharge of a firearm he was involved in, which was the subject of a *Giglio* motion and this Court's subsequent Order.

### III.    FINDINGS OF FACT

The Court makes its factual findings in the Analysis section. Additionally, this Court has engaged in significant fact-finding in this case in previously written Reports and Recommendations [Docs. 24 and 39]. The Court incorporates previous factual findings by reference.

### IV.    ANALYSIS

Defendant Jones contends the government's inability to produce the ammunition allegedly seized from him and its failure to preserve evidence significantly prejudice his ability to prepare his defense. Defendant Jones contends the government is in violation of Fed.R.Crim.P 16(a)(1)(E), and thus the Court should fashion an appropriate remedy to the government's discovery violation, including the exclusion of the evidence. Defendant Jones further contends the denial of the opportunity to challenge the government's proof violates his right to Due Process and his right to present a defense. The government, in response, argues that for the Court to exclude this evidence requires a finding of bad faith on the part of the police, a finding which the facts in this case do not support.

In general, the government is required to preserve all evidence subject to disclosure under

14

any of the Federal Rules of Criminal Procedure or under Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), or their progeny. In determining whether the government's failure to preserve evidence amounts to a constitutional violation, the Supreme Court has held "that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, 488 U.S. 51, 58 (1998). See also United States v. Allen, 954 F.2d 1160, 1168-69 (6th Cir. 1992) (no due process violation in defendant's inability to refute number of marijuana plants manufactured where no bad faith was shown and plants had been counted prior to their destruction by agents).

Defendant Jones contends that since a discovery violation is implicated by the government's inability to produce requested material, the bad faith principle articulated in the Youngblood line of cases is inapplicable. However, this Court must disagree with Defendant's assertion and follow the reasoning articulated by the Supreme Court in Illinois v. Fisher, 540 U.S. 544, 548 (2004) which requires a bad faith analysis on the part of the Court even when the destruction of evidence occurred in conjunction with a pending discovery request. (rejecting the Illinois Appellate Court's determination that when evidence is requested by the defense in a discovery motion, no showing of bad faith is necessary if the evidence is destroyed) ("We have never held or suggested that the existence of a pending discovery request eliminates the necessity of showing of bad faith on the part of the police. Indeed, the result reached in this case demonstrated why such a *per se* rule would negate the very reason we adopted the bad-faith requirement in the first place: to "limi[t] the extent of the police's obligation to preserve evidence to reasonable grounds and confin[e] it to that class of cases where the interests of justice most clearly require it.") (citation omitted).

15

The Court acknowledges it is being asked to embark on the slippery slope or the "treacherous task of divining the import of materials" (in this case the import of actual, tangible bullets). California v. Trombetta, 467 U.S. 479, 486 (1984). While the government argues they would be inculpating, Defendant argues they are potentially exculpatory. Unfortunately, there are no bullets currently before the Court for examination. However, "whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence" that might (1) "be expected to play a significant role in the suspect's defense"; (2) "must possess an exculpatory value that was apparent before the evidence was destroyed" ; and (3) must "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 488-89. In this case, the Court finds Defendant arguably meets the third factor (that the bullets are of such a nature that he is unable to obtain comparable evidence by other reasonably available means), but not the first or second factor. In regards to the first factor, it seems to the Court that it would indeed be the most exceptional case where the presence of the actual bullets would do anything other than confirm the manufacturer, and thus the location of manufacture; as such they could hardly be expected to play a significant role in Defendant's defense. In regards to the second factor, there is no reason to believe that law enforcement would be aware of any exculpatory value of the bullets. Furthermore, not only can any alleged inaccuracies be explored at trial through vigorous cross examination, but arguably, and seemingly, such an exercise would be far more beneficial to the defense in the absence of the bullets themselves.

Moreover, Defendant Jones has offered no evidence to show that the officers acted in bad faith in disposing of or losing the bullets recovered from him. To establish bad faith, Defendant must prove "official animus" or a "conscious effort to suppress exculpatory evidence." Trombetta,

467 U.S. at 488. While the Court is uneasy with the SPD's lack of formal policies and procedures being in place to guide their officers in the preservation of evidence, the Court cannot say that, in this case, anyone acted in bad faith. While the officers' testimony at the evidentiary hearing, which this Court finds to be credible, shows the SPD or one of its agents, apparently acted negligent, perhaps even grossly negligent by acts of commission, and SA Parris may have been negligent by acts of omission, in failing to preserve the evidence in this case, there is no evidence that anyone acted in bad faith. See United States v. Deaner, 1 F.3d 192, 200-01 (3d Cir. 1993) (government's destruction of marijuana before sentencing was not in bad faith, despite defendant's earlier discovery request for the marijuana); see also United States v. Femia, 9F.3d 990, 993-94 (1st Cir. 1993) (government's destruction of tape recordings of conversations between defendant and alleged co-conspirators did not violate due process, despite government's gross negligence in failing to preserve the tapes). There is no proof that the SPD or anyone acted intentionally to lose the bullets or acted pursuant to any other objective in requesting permission to dispose of the gun in January 2007 other than to rid itself of evidence it believed was no longer necessary.[4] Furthermore, Defendant Jones has not presented evidence to show that the inexplicable loss of the bullets nor the "policy" of destroying evidence was instituted in bad faith, that is, it was to deprive him of an opportunity to examine the gun or ammunition in preparing his defense. Thus, Defendant Jones has failed to make the requisite showing that the government should be foreclosed from admitting trial evidence related to the ammunition and gun allegedly seized from him as a violation of his Due Process rights.

---

[4]The Court cannot help but note that the issue regarding the gun could have been avoided if the SPD had a routine destruction of evidence policy in place, instead of filing a petition with the criminal court when the evidence custodian determines the evidence to be "old."

If this Court had found that there had been an adequate showing on the part of the defense that the bullets had a clearly exculpatory character for exonerating the Defendant, or were destroyed or "lost" through acts of bad faith, *e.g.*, for the purpose of hindering the defense, the Court might recommend the exclusion of the evidence and testimony regarding it. However, it appears from Defendant's argument this his position at trial may include a denial of the presence of the bullets on the Defendant's person. Thus, the presence of the bullets could hardly be argued to be beneficial or exculpatory or exonerating to Defendant. To the contrary, it is the current absence of the bullets that could be deemed to bolster such an argument.

Finally, this Court recommends that the District Court consider using the "permissive inference" jury charge as articulated in Youngblood when this matter does proceed to trial.

## V. CONCLUSION

For the reasons set forth herein, it is **RECOMMENDED** that Defendant Brian Keith Jones's Motion to Exclude Evidence or Testimony Related to the Ammunition Allegedly Seized from Mr. Jones **[Doc. 44]** be **DENIED.**[5]

                                                        Respectfully submitted,

                                                        s/ C. Clifford Shirley, Jr.
                                                        United States Magistrate Judge

---

[5] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see also Thomas v. Arn, 474 U.S. 140 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).